## In re Societa Italiana Mutuo Soccorso

*Bloom & Bloom,* for petitioner.

BROWNSON, P. J., August 24, 1935.—This corporation is, as its corporate name imports, a mutual benefit society. Its purpose is set forth in article II of its charter as being: "The maintenance of a society for beneficial or protective purposes to its members from funds collected therein."

Article VII provides:

"Fees for membership and annual dues of members shall be assessed as the corporation by its by-laws shall determine, which fees and dues, as well as money derived from all other sources, shall be applied to promoting the purposes for which the corporation is formed."

Article IX contains this provision:

"No vinous, malt, brewed or spirituous liquors of any kind whatsoever, shall be sold or kept for sale, or used, served or distributed in connection with this corporation, or in any room or rooms in which its meetings are held or any of its business transacted".

This is followed by a stipulation for the annulment and surrender of the charter in the event of its violation.

It is now proposed to amend the charter in two particulars: (1) By altering article II so as to add to the corporate purpose originally specified additional purposes, viz., "and to cultivate social enjoyment by means of lawful forms of entertainment and to instruct its members in the customs and ideals of the American people;" and (2) by striking out entirely article IX.

We see no objection to permitting the society to combine the payment of benefits to members and their families and the providing of social enjoyment and civic instruction. The Nonprofit Corporation Law of May 5, 1933, P. L. 289, in sec. 701, expressly allows amendments inserting in the charter "additional powers or purposes."

Nor can we see, since the repeal of prohibition, and in view of the present legislative attitude toward the furnishing by social organizations of liquors to their members, that there is any legal reason for requiring this corporation to retain in its charter a provision prohibiting this. Of course, the members will understand that if article IX be eliminated this will not imply that they may do anything in connection with intoxicating liquors that the statutes of the State do not permit.

But we are not satisfied that the approval of these amendments as framed, without the addition of some provision for safeguarding the benefit fund, which was originally the sole purpose of the organization, and is intended still to be one of the primary purposes, would be, in the language of the Nonprofit Corporation Law, "beneficial and not injurious".

It appeared at the hearing that it is proposed to keep on hand a stock of liquors for the use of members, and to incur expenses in connection with and for the purposes of the social features which are to be added to the objects of the society. When asked by the court what plans had been made to provide the funds for these new expenses and for keeping the benefit funds separate from the fund for expenses of other operations, the officers replied that no plans had been agreed upon and that the expenses of providing and keeping a stock of liquors and providing facilities for social entertainment would be paid out of the treasury. It further appeared that the society pays death benefits of $150 and sick benefits of $8 per week for the first 13 weeks, and then $4 per week for 13 more weeks; and that it has on hand accumulated funds to the amounts of $900.65 on deposit in a savings account and $199 deposited in a checking account. These accumulated funds, as well as all income to be received on dues of members, which at the present time are $1 per month, the society having about sixty members, were by article VII of the charter appropriated and pledged to the maintenance and operation of the mutual benefit

scheme, that being the only "purpose for which the corporation [was] formed." The moneys now on hand, which were paid in specifically for the purpose of carrying out the mutual benefit purpose, are in the nature of trust funds and should not be diverted to other purposes. And some provision ought to be made for setting apart, out of future dues paid by members, the moneys required to maintain the benefit fund. To permit all funds to be mingled together in the treasury and paid out indiscriminately might result in the dissipation of funds required to meet benefit payments and in thus interfering with the purpose of caring for the families of deceased members and the needs of sick members. In short, we think and suggest that, when it is proposed to add another distinct and unrelated purpose to the original beneficial purpose, there ought to be some plan and provision for keeping benefit funds and funds usable for the new purpose separate from each other and for safeguarding the former, which should be included in the proposed amendments.

We shall withhold action for the present upon this application, and thus give an opportunity to formulate and adopt some plan or provision such as is herein suggested, and to amend the application by incorporating the same in the proposed charter amendments.

But to what is above said we add that we find, on inspection, that the advertisement is not in conformity with the statutory requirements. Section 706 of the Nonprofit Corporation Law explicitly and expressly requires that the advertisement shall contain, inter alia, "A statement that the application is to be made under the provisions of this act." This advertisement states that the application is under the Act of April 29, 1874, P. L. 73, its supplements and amendments, which have been superseded and repealed by the Nonprofit Corporation Law so far as concerns this corporation and other similarly chartered: See sections 3 and 1102 of the act.

And now, August 24, 1935, it is ordered that the foregoing opinion be filed.